IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CYNTHIA PINSKI,                                    Civ. No. 6:24-cv-00185-AA

                    Plaintiff,                     **OPINION & ORDER**

          v.

CITY OF PHILOMATH; BLAKE BOWERS;
CITY OF CORVALLIS; RHODA KRAUSE;
JOHN DOES 1-5 (PHILOMATH POLICE
DEPARTMENT TRAINERS AND
SUPERVISORS); DOES 6-10 (CORVALLIS
POLICE DEPARTMENT TRAINERS AND
SUPERVISORS),

                    Defendants.
_____

AIKEN, District Judge.

          This case comes before the Court on a Motion for Summary Judgment filed by

Defendants.  ECF No. 26.  The Court concludes that this motion is suitable for

resolution without oral argument.  For the reasons set forth below, the Motion is

GRANTED.

## LEGAL STANDARD

          Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, affidavits, and admissions on file, if any, show "that there is no

genuine dispute as to any material fact and the [moving party] is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  Substantive law on an issue determines

the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

A court may properly consider the video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## BACKGROUND

Plaintiff Cynthia Pinski is a nurse who, at the time of the facts giving rise to this case, worked at a hospital in Corvallis, Oregon. Pinski Decl. ¶ 2. ECF No. 37. At all relevant times, Plaintiff lived in Newport, Oregon, and had a lengthy daily commute to Corvallis, which passed through Philomath, Oregon. *Id.* ¶ 6.

Defendant Blake Bowers is a police officer employed by Defendant City of Philomath.  Bowers Decl. ¶ 1.  ECF No. 28.

Defendant Rhoda Krause is a police officer and Drug Recognition Expert ("DRE") employed by Defendant City of Corvallis.  Krause Decl. ¶¶ 1-3.  ECF No. 29.

On January 28, 2022, Plaintiff worked from 10:59 a.m. to 11:29 p.m.  Pinski Decl. ¶ 2.  After stopping for food, Plaintiff began her commute back to Newport and passed through Philomath shortly after midnight on January 29, 2022.  *Id.* ¶¶ 4, 11.

Bowers was on patrol in uniform and driving a marked patrol vehicle on Main Street in Philomath.  Bowers Decl. ¶ 2.  While traveling westbound on Main Street, Bowers found himself behind Plaintiff's vehicle.  *Id.*

In her Declaration, Plaintiff asserts that Bowers followed her several blocks on Main Street before quickly closing the distance and "tailgating" her.  Pinski Decl. ¶¶ 12, 14.  Plaintiff would later describe Bowers are "very close behind her."  Krause Ex. 5 at 1:27:36-1:28:03.[1]  At the time, Plaintiff was not aware that the vehicle behind her was a police cruiser.  Pinski Decl. ¶ 18.

Main Street is a one-way road with two lanes of traffic and Plaintiff was frustrated that Bowers "followed [her] at an unsafely close distance rather than passing [her] in the lefthand lane."  Pinski Decl. ¶ 13.  Plaintiff stated: "Since the car did not pass me, I pulled over onto the shoulder of the road to allow them to pass so I could continue my route home without fear or frustration."  *Id.* ¶ 16.

---

[1] The Court's citations to the video exhibits use the time stamp of the video exhibits themselves, rather than the time and date recorded by the body-worn camera footage.

Plaintiff's wheel crossed the fog line, at which time Bowers activated his lights and Plaintiff became aware that the vehicle behind her was a police cruiser. Pinski Decl. ¶ 18; Bowers Decl. ¶ 3. Bowers affirms that he believed the crossing of the fog line was a violation of ORS 811.370(1). Bowers Decl. ¶ 3. Bowers initially observed that Plaintiff's rear license plate only displayed the month sticker but as he approached he could see that it had an expired year sticker affixed in the wrong location, which Bowers identified as a violation of ORS 803.560(1). *Id.* ¶ 4. As a result of these violations, Bowers believed he had subjective and objective probable cause to initiate a traffic stop. *Id.* ¶ 5. In addition, Bowers believed that Plaintiff's crossing of the fog line might indicate that she was impaired and potentially driving under the influence of intoxicants ("DUII"). *Id.*

Plaintiff pulled over in response to Bowers's lights and Bowers approached Plaintiff's vehicle. Pinski Decl. ¶ 19; Bowers Decl. ¶ 7. Bowers asked Plaintiff why she had been driving on the fog line, which Plaintiff denied, stating that she had been pulling over to let Bowers pass her. Pinski Decl. ¶ 21; Bowers Decl. ¶¶ 7-8. Bowers believed that Plaintiff was unaware of her vehicle's position on the road, which also potentially signaled impairment. Bowers Decl. ¶ 7. Plaintiff told Bowers that she was a nurse coming from a lengthy shift at the hospital. Pinksi Decl. ¶ 22.

Bowers observed that Plaintiff's demeanor was "irritated and argumentative," and believed that irritability was another possible indicator of intoxication. Bowers Decl. ¶ 8.

Bowers asked Plaintiff for her license, registration, and proof of insurance. Pinski Decl. ¶ 23; Bowers Decl. ¶ 9. Plaintiff struggled to locate her paperwork, which she attributes to the lack of her reading glasses. Pinski Decl. ¶¶ 24, 30. Plaintiff eventually produced documents to Bowers which included "an expired vehicle registration, a DMV receipt from 2019 and an expired insurance card." Bowers Decl. ¶ 11. Plaintiff mumbled while she looked through documents, which Bowers believed was a possible sign of impairment. *Id.* Plaintiff balanced a plastic license on the edge of the door, saying that it was the Utah license, but the license fell to the floor. *Id.* ¶ 12. Bowers found this to be strange and considered it to be another "possible indicator of cognitive impairment caused by intoxication." *Id.*

Plaintiff handed Bowers her Oregon concealed handgun license and an expired, hole-punched Oregon driver's license. Bowers Decl. ¶ 13. When Bowers told her that the insurance card was expired, Plaintiff said she probably had more paperwork in the glove box. *Id.* When Bowers said she could look for it, Plaintiff pulled out more paperwork but did not hand any additional documents to Bowers. *Id.*

Plaintiff laughed at several points during the encounter, which Plaintiff attributes to her frustration or her lack of understanding of the situation. Pinski Decl. ¶¶ 25-26. Bowers observed that Plaintiff's demeanor changed from irritated and argumentative to smiling and giggling and that she "started to say something to me but appeared to lose her train of thought." Bowers Decl. ¶ 9. Bowers asked Plaintiff what she was laughing about but Plaintiff did not answer. *Id.* Bowers

believed that Plaintiff's "mood changes," and "incomplete thoughts and statements [were] possible indicators of cognitive impairment caused by intoxication." *Id.*

Bowers took Plaintiff's documents back to his cruiser and performed a records check on Plaintiff and her vehicle. Pinksi Decl. ¶ 34; Bowers Decl. ¶ 14.

Bowers returned to Plaintiff's vehicle a few moments later and found she was still searching in her car for documents. Bowers Decl. ¶ 14. Bowers asked her when she got off work and Plaintiff "started rambling in incomplete sentences about being tired, that she was a nurse, that she got off work from the hospital." *Id.* Plaintiff told Bowers that she lived in Newport, that she was on her way home, and that she was exhausted. *Id.* Bowers asked Plaintiff three times what time she got off work before she answered "eleven, eleven-thirty." *Id.* Plaintiff showed Bowers her hospital identification badge and told him she was "starving to death" so she stopped at a Taco Bell and that she wanted to go home. *Id.* Bowers believed that Plaintiff's "rambling demeanor and not answering simple questions until asked repeatedly," as well as her drowsiness, were possible indicators of cognitive impairment caused by intoxication. *Id.* Bowers affirms that he was also aware that hospital staff have ready access to a wide variety of drugs and typically have advanced knowledge of drugs. *Id.*

Bowers asked Plaintiff if she had consumed any alcohol, which Plaintiff denied, telling him that she was Mormon and did not drink. Pinski Decl. ¶ 36; Bowers Decl. ¶ 15. Bowers also asked if Plaintiff had consumed any marijuana, but Plaintiff did not answer that question. Bowers Decl. ¶ 15.

Bowers asked Plaintiff if she was taking any prescription drugs, to which Plaintiff responded that she was prescribed migraine medication, but that she had not taken any. Pinski Decl. ¶ 37; Bowers Decl. ¶ 15.

Bowers also told Plaintiff that her vehicle registration was expired, to which Plaintiff expressed her disbelief. Pinksi ¶ 40. Plaintiff admits that she did not have current registration stickers on her vehicles license plate and that the stickers were not in the correct position on the plate at the time of the stop. Lewis Decl. Ex 1, at 3-4, 6.

Bowers affirms that he believed that he had probable cause to believe Plaintiff had committed the crime of Driving Under the Influence of Intoxicants in violation of ORS 813.010(1). Bowers Decl. ¶ 16. Bowers asked Plaintiff if she would perform standardized field sobriety tests ("SFSTs"), to which Plaintiff consented. Pinski Decl. ¶¶ 38-39; Bowers Decl. ¶ 16.

Plaintiff got out of the car, leaving the door open behind her, which Bowers found surprising given the proximity of the westbound lane of the road and the cold temperatures. Bowers Decl. ¶ 17. Bowers believed that this demonstrated a lack of situational awareness and relaxed inhibitions, which might also be an indication of intoxication. *Id.*

Bowers directed Plaintiff to the nearby sidewalk and advised her of her *Miranda* rights. Bowers Decl. ¶ 19. Bowers explained the SFSTs to Plaintiff and asked if she had any injuries, to which Plaintiff responded that she had plantar fasciitis but was able to walk. Bowers Decl. ¶ 20; Pinski Decl. ¶ 44. Plaintiff also has

piriformis syndrome, which causes sciatic pain, although this was not conveyed to Bowers. Pinski Decl. ¶ 47.

Bowers then performed the tests, beginning with the Horizontal Gaze Nystagmus Test and the Vertical Gaze Nystagmus Test, which he explained to Plaintiff beforehand. Bowers Decl. ¶¶ 21-22. Bowers did not observe any lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, onset of nystagmus prior to 45 degrees in either of her eyes, and he did not observe any vertical gaze nystagmus. *Id.*

Bowers next administered the Walk and Turn Test. Bowers Decl. ¶ 23. During this test, Plaintiff failed to follow directions, started walking before Bowers told her to begin and had to restart the test, took too many steps, waived her arms for balance, missed the heel-to-toe step on step six, and did not turn or attempt returning steps as instructed. *Id.* ¶¶ 23-27. Bowers observed seven out of eight possible clues for impairment, and believed that Plaintiff's poor performance on the test, including difficulty with balance, difficulty following instructions, impaired memory, poor coordination, and confusion were possible indicators of intoxication. *Id.* ¶ 27.

The next SFST was the One Leg Stand Test. Bowers Decl. ¶ 28. Contrary to Bowers's instructions, Plaintiff lifted her arms out from her sides to keep her balance and failed to keep her foot parallel to the ground. *Id.* ¶ 29. Plaintiff placed her foot down four seconds into the test and started again, raising her arms again to aid her balance, despite being reminded to keep them at her sides. *Id.* Plaintiff restarted the test but continued to flail her arms to keep her balance. *Id.* Bowers observed

three out of four possible clues for impairment on the One Leg Stand Test and concluded that her poor performance on the test, including difficulty with balance, difficulty following instructions, and poor coordination were possible signs of intoxication. *Id.*

The last SFST Bowers administered was the Modified Romberg Balance Test. Bowers Decl. ¶ 30. In that test, Plaintiff was instructed to stand in a certain position with her head back and her eyes closed and estimate the passage of thirty seconds, at which point she was to tilt her head forward, open her eyes, and say "stop." *Id.* The test standard is to estimate thirty seconds plus or minus five seconds. *Id.* Plaintiff failed to follow instructions, tilting her head forward and backward and keeping her eyes closed when she called "stop." *Id.* Plaintiff's estimate of the time amounted to thirty-seven seconds, beyond the test standard. *Id.* Bowers believed that Plaintiff's difficulty in following instruction and impaired perception of time were further possible indicators of intoxication. *Id.*

Plaintiff acknowledges that she had difficulty performing the SFSTs, which she attributes variously to her fatigue, her medical conditions, the cold weather, the speed with which Bowers spoke, and the fact that "balance was such a large component" of the tests. Pinski Decl. ¶¶ 45, 47-48.

At 12:36 a.m., Bowers placed Plaintiff under arrest for DUII. Pinski Decl. ¶ 52; Bowers Decl. ¶¶ 32-35. Bowers placed Plaintiff in the back of his cruiser and, with the assistance of a deputy from the Benton County Sheriff's Office, Bowers searched Plaintiff's vehicle. Bowers Decl. ¶¶ 36-37. During the search, Bowers found

and seized multiple plastic baggies of pill capsules and tablets and an orange prescription bottle with the label scratched off and which contained seven different medications, which Bowers believed to be evidence of the crime of DUII. *Id.* ¶ 37. The pills would later be identified as innocuous medications such as antihistamines, anti-depressants, and medicine for acid reflux, heartburn, and migraines. Krause Decl. ¶ 7.

With Plaintiff's consent, Bowers moved Plaintiff's vehicle to a nearby parking lot before locking and photographing the vehicle. Bowers Decl. ¶ 38. Bowers told Plaintiff that when they finished with the DUII processing, she would be released and not taken to jail. *Id.* ¶ 39.

Plaintiff was transported to the Philomath police station where she consented to take a breathalyzer test, which revealed a blood alcohol content (BAC) of 0.0%. Pinski Decl. ¶ 53; Bowers Decl. ¶¶ 40-43. Bowers concluded that Plaintiff's degree of impairment did not match her BAC result and believed that she was under the influence of an intoxicant other than alcohol. Bowers Decl. ¶ 44.

Bowers explained to Plaintiff that he would call for a Drug Recognition Expert ("DRE") who would provide an independent assessment of Plaintiff's condition. Bowers Decl. ¶ 45. Bowers explained the DRE process and asked her if she was willing to participate and she said that she was. Bowers Decl. ¶ 45. At 1:29 a.m., Bowers radioed dispatch to request a DRE. Bowers Decl. ¶ 46.

Plaintiff also consented to provide a urine sample for urinalysis and provided a sample. Pinski Decl. ¶ 54; Bowers Decl. ¶ 46.

At 1:54 a.m., Krause, who was off duty at the time, was paged with a request for DRE services in Philomath. Krause Decl. ¶ 5. At 2:38 a.m., Krause arrived to perform the DRE evaluation. Bowers Decl. ¶ 47. Bowers described the stop, his observations of Plaintiff, her performance on the SFSTs, the seizure of the pills, and the BAC result to Krause. *Id.*; Krause Decl. ¶¶ 6-8.

Beginning at 3:00 a.m., Krause explained the DRE process to Plaintiff and Plaintiff consented to the DRE examination. Krause Decl. ¶ 9; Ex. 5, at 00:01:31. Plaintiff participated in a DRE examination with Krause. Pinski Decl. ¶ 56.

During the examination, Krause observed that Plaintiff's speech was slow and her eyes were mostly closed during parts of the conversation, which Krause considered potential indications of drug use. Krause Decl. ¶ 12. Plaintiff's eyes were bloodshot and her eyelids were droopy, which Krause also considered potential signs of drug use. *Id.* ¶ 13. Krause administered the SFSTs and, during the Walk and Turn Test, Plaintiff exhibited five of eight possible signs of impairment, including raising her arms, missing multiple heel-to-toe steps, stopping during the test, demonstrating an improper turn, and taking an improper number of steps. *Id.* ¶ 16.

During the One Leg Stand Test, Plaintiff exhibited three out of four signs of impairment, including swaying, raising her arm for balance, and putting her foot down. Krause Decl. ¶ 17. Krause became concerned that Plaintiff would fall and told her she could stop the test if she felt like she would fall and Plaintiff stopped the test. *Id.* Plaintiff performed a second One Leg Stand Test in which she once again displayed three out of four signs of impairment, including swaying, raising her arms

for balance, and putting her foot down before the test was over. *Id.* ¶ 18. Krause believed that Plaintiff's performance on the One Leg Stand Tests indicated possible drug intoxication. *Id.* ¶¶ 17-18.

Krause administered the Finger to Nose Test, which Plaintiff was only able to perform successfully on one out of six attempts. Krause Decl. ¶ 19. Krause considered Plaintiff's poor performance on this test to be another possible indication of impairment. *Id.*

During the evaluation, Plaintiff "seemed exhausted and sounded frustrated and tired," and "said she had been crying earlier before [Krause's] evaluation and she started crying again during [Krause's] interview." Krause Decl. ¶ 27. However, at other points in the evaluation, Plaintiff was laughing and smiling. *Id.* Like Bowers, Krause considered Plaintiff's mood fluctuations to be a potential indication of intoxication. *Id.*

At the conclusion of the DRE examination, Krause informed Bowers that she believed Plaintiff to be impaired but had not formed an opinion as to the cause of the impairment. Bowers Decl. ¶ 48; Krause Decl. ¶¶ 28-29, 32. Bowers provided Krause with Plaintiff's urine sample, which Krause entered into evidence and submitted to the Oregon State Police Crime Lab. Bowers Decl. ¶ 48; Krause Decl. ¶ 31.

Plaintiff was not booked into jail, but because she lived in Newport and had no nearby place to stay, Bowers drove her to a nearby motel after stopping to allow Plaintiff to collect her purse from the vehicle. Pinski Decl. ¶ 59; Bowers Decl. ¶ 49. When he dropped her off at the motel, Bowers cited Plaintiff for DUII—Unclassified

in violation of ORS 813.010(1).  Pinski Decl. ¶ 58; Bowers Decl. ¶ 50.  In addition to the citation and other paperwork, Bowers returned Plaintiff's phone, wallet, and the keys to her vehicle.  Bowers Decl. ¶ 50.

Plaintiff states that she believed she was not free to leave the motel, although she did leave the following morning to pick up her vehicle.  Pinski Decl. ¶¶ 60-61.

Bowers prepared his police report, Bowers Decl. Ex. 1, and it was forwarded to the Philomath Municipal Court.  Bowers Decl. ¶ 51.

A week or two later, after reviewing her notes and camera footage and after consultation with another officer, Krause determined that Plaintiff was impaired at the time of the evaluation and that the cause of her impairment was more likely than not caused by a medical issue.  Krause Decl. ¶ 33.  Krause prepared her report and submitted it, via the Corvallis Police Department, to the Philomath Police Department and the Philomath City Attorney's Office.  *Id.* ¶ 34.  Krause had no further involvement with the case other than receiving a copy of the urinalysis results.  *Id.*

Bowers received a copy of Krause's report and was aware that it had been forwarded to the Philomath City Attorney.  Bowers Decl. ¶ 56.  Bowers affirms that Krause's report did not change his belief that he had probable cause to believe Plaintiff was under the influence of intoxicants based on his observations.  *Id.*

Philomath deputy city attorney and city prosecutor Catherine Pratt reviewed the reports from Bowers and Krause, as well as the body-worn camera footage from Bowers and Krause.  Pratt Decl. ¶¶ 1, 3.  ECF No. 27.  Pratt affirms that she was

aware that Krause believed Plaintiff was medically impaired, but "did not find that her opinion nor the contends of her report ruled out the presence of an intoxicant and did not negate what Philomath Police Officer Bowers observed at the scene of his traffic stop." *Id.* ¶ 7. Upon review of the record, Pratt believed there was probable cause to move forward with charges against Plaintiff in the Philomath Municipal Court. *Id.* ¶ 9.

Bowers affirms that he may have spoken to Pratt but maintains that he "did not influence or attempt to influence her prosecution decisions" about Plaintiff and that the decision to prosecute Plaintiff was left entirely up to Pratt. Bowers Decl. ¶ 57. Pratt likewise affirms that her decision to prosecute Plaintiff for DUII was "based upon [her] own training and experience in making prosecutorial decisions," and that neither Bowers, nor Krause, nor anyone employed by the City Defendants influenced or attempted to influence her decision to prosecute, continue, or eventually dismiss the charge against Plaintiff. Pratt Decl. ¶ 11.

The urinalysis results subsequently revealed the presence of prescription anti-convulsant and anti-depressant medications, but no illegal drugs. Krause Decl. ¶ 34. Pratt learned in March 2022 that the urinalysis report did not show the presence of a controlled substance that was not prescribed to Plaintiff. Pratt Decl. ¶ 10. Pratt believed that this "impacted [her] ability to prove a necessary element of the charge beyond a reasonable doubt," and so Pratt moved to dismiss the citation on March 29, 2022, and the court granted the motion on April 4, 2022. *Id.*

## DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 and under state law challenging (1) her initial stop by Bowers (Counts I and II); (2) the field sobriety tests (Counts III and IV); (3) her arrest (Counts V and VI); (4) the search of her vehicle (Counts VII and VIII); (5) the seizure of items from her vehicle (Counts IX and X); (6) her evaluation by a DRE (Counts XI and XII); (7) her alleged detention at a motel (Counts XIV and XV)[2]; (8) malicious prosecution (Counts XVI, XVII, XVIII, and XIX); (9) negligent infliction of emotional distress (Count XX); (10) "Failure to Train and/or Supervise" (Count XXI and XXII); and (11) *Monell* claims (Counts XXIII and XXIV). During conferral, Plaintiff agreed to withdraw Counts XXI and XXII for failure to train and/or supervise, Def. Mot. 28, and Defendants move for summary judgment as to all remaining claims and have asserted a defense of qualified immunity as to Bowers and Krause.

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

The Oregon Tort Claims Act ("OTCA") provides a limited waiver of public bodies' sovereign immunity and provides that the sole cause of action for a tort

---

[2] The Complaint omits a Count XIII.

committed by an employee is an action under ORS 30.260 to 30.300 of the OTCA and sets out circumstances where the public body must be substituted as a party for an individual employee. ORS 30.265(1), (2).

The Court will address Plaintiff's overlapping state and federal claims according to their subject matter.

## I.    The Initial Stop

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by initiating the initial traffic stop (Count I). Compl. ¶¶ 50-52. Plaintiff also alleges that the City of Philomath unlawfully confined her when Bowers initiated the initial traffic stop (Count II). *Id.* ¶¶ 53-57.

For purposes of the Fourth Amendment, an investigatory traffic stop must be supported by reasonable suspicion. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). "Reasonable suspicion is formed by specific articulable facts which, together with objective and reasonable inferences form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) (internal quotation marks and citation omitted). An officer's inferences must be grounded in objective facts and capable of rational explanation. *Id.*

Under Oregon law, to lawfully stop and detain a person for a traffic infraction, an officer must have probable cause to believe that the infraction has been committed. *State v. Isley*, 182 Or. App. 186, 190 (2002). For Oregon law, probable cause requires

that, at the time of the stop, the officer subjectively believes that the traffic infraction occurred and that belief must be objectively reasonable under the circumstances. *Id.* "[A]n officer's subjective belief that a traffic infraction occurred is objectively reasonable if, and only if, the facts as the officer perceived them actually satisfy the elements of a traffic violation." *State v. Tiffin*, 202 Or. App. 199, 204 (2005).

Under federal law, "where the material, historical facts are not in dispute, and the only disputes are what inferences properly may be drawn from those historical facts, it is appropriate for [courts] to decide whether probable cause existed[.]" *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003). Similarly, under Oregon law, "[i]t is the trial court's function, not the jury's function, to determine the issue of probable cause," when the facts and circumstances underlying the question of probable cause are not in dispute. *Miller v. Columbia Cnty.*, 282 Or. App. 348, 355 (2016).

### A. ORS 811.370

Bowers affirms that he believed Plaintiff's crossing of the fog line was a violation of ORS 811.370, Failure to Drive Within a Lane, which provides that "a person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not: (a) Operate the vehicle as nearly as practicable entirely within a single lane; and (b) Refrain from moving from that lane until the driver has first made certain that the movement can be made with safety." ORS 811.370(1).

In the case of ORS 811.370, the fog line demarcates an outer boundary of a lane. *State v. Wentworth*, 252 Or. App. 129, 134 (2012).  In 2023, the Oregon Court of Appeals held that a "momentary and minor" lane deviation—in that case the right rear passenger tire crossing the fog line by the width of a tire for 1.5 seconds—did not constitute a violation of ORS 811.370 and so did not provide probable cause for the stop. *State v. Little*, 326 Or. App. 788, 794-95 (2023).  That decision was issued more than a year after Bowers stopped Plaintiff in January 2022.  Prior to *Little*, the Oregon appellate courts had declined to reach the issue of whether a momentary touching of the fog line constituted a violation of ORS 811.370.  *Id.* at 791 (so noting); *State v. Derby*, 301 Or. App. 134, 140 n.1 (2019) ("If a driver is moving forward in a clearly marked lane, any deviation from the lane—except possibly a truly *de minimis* one—may constitute failure to maintain a lane."); *State v. Rosling*, 288 Or. App. 357, 362 (2017) ("We agree with the state, although in doing so, we need not reach the issue of whether a true *de minimis* touching of a lane line is an offense under ORS 811.370."); *State v. McBroom*, 179 Or. App. 120, 125 n.3 (2002) ("This is not a case in which defendant's car tires touched the center line only briefly.  We accordingly need not decide whether that act, standing alone, would give an officer probable cause to believe that a driver had failed to operate his or her car as nearly as practicable entirely within a single lane.").

The state of the law at the time of the stop was such that even a brief crossing of the fog line provided probable cause for a stop under ORS 811.370. *See McBroom*, 179 Or. App. at 124-26 (noting that the requirement that a driver stay within a lane

is "not absolute," but finding probable cause when the driver drove on but not over the center line); *State v. Vanlom*, 232 Or. App. 492, 497-98 (2009) (finding probable cause where the defendant did not dispute driving on the lane lines and rejecting the argument that "because it was so brief," it did not constitute a violation of the statute) *Wentworth*, 252 Or. App. at 134-35 (affirming after finding that the defendant had not preserved the argument that an "incidental and momentary" crossing of the fog line was not a violation of ORS 811.370); *see also State v. Koteen*, 344 Or. App. 527 (2025) (noting that "[i]n some circumstances" a "single 'digression' from a traffic lane can provide probable cause to believe a driver has committed the offense of failure to stay within a lane as set forth in ORS 811.370.").[3]

Here, Bowers was driving behind Plaintiff when he "observed the passenger side tires of the Tacoma drive onto the solid white fog line and into the designated bike lane by less than one tire width." Bowers. Decl. ¶ 3. Plaintiff states that she saw Bowers "tailgating [her] for several blocks" and admits that she "began to cross the fog line" to let him pass when he turned on police lights. Pinski Decl. ¶¶ 12, 18.[4]

---

[3] Plaintiff cites to *United States v. Colin*, 314 F.3d 439 (2002), a federal criminal appeal in which the Ninth Circuit considered the proper interpretation of a California lane-straddling law. As a federal criminal appeal concerning the interpretation of a different statute from another state, the Court finds *Colin* inapposite to the analysis of whether Bowers possessed either reasonable suspicion or probable cause to stop Plaintiff for a violation of ORS 311.370.

[4] Plaintiff has provided an expert declaration from Andrew Connolly, a former police officer, who asserts that Bowers would not have been able to observe Plaintiff cross the fog line, but provides no scientific basis for this conclusion, which appears to be pure speculation on Connolly's part. Connolly Decl. ¶ 6. ECF No. 36. Plaintiff admitted in her Declaration that she crossed the fog line. Pinski Decl. ¶¶ 16, 18. Plaintiff's admission that she crossed the fog line renders her claim that there is an issue of fact over whether she crossed the fog line multiple times irrelevant.

Here, the Court concludes that Bowers had reasonable suspicion and probable cause to believe that Plaintiff had violated ORS 811.370. Bowers properly stopped Plaintiff for violation of ORS 811.370.

**B. ORS 803.560**

ORS 803.560 provides that a person "commits the offense of improper display of validating stickers if the person owns or drives a vehicle on which the display of registration stickers provides proof of valid registration and: (a) The stickers are not displayed in a manner required by the Department of Transportation; or (b) The stickers are displayed in the vehicle after the registration period shown on the stickers." ORS 803.560(1). The "year" sticker must be "attached at the bottom right of the registration plate." OAR 735-032-0036(3)(c).

Here, the undisputed facts show that the sticker attached to Plaintiff's license plate was expired, showing the year 2021, and improperly placed, with the year sticker in the upper right corner, rather than the lower right. Plaintiff admitted in her deposition that her sticker was expired and misplaced. Lewis Decl. Ex. 1, at 3-4. Defendants have also submitted a photograph showing Plaintiff's license plate with the expired and improperly placed year sticker. *Id.* at 6. Bowers affirmed that he observed this violation prior to pulling over Plaintiff. Bowers Decl. ¶ 4; Sherlag Decl. Ex. 1, at 24-25. Plaintiff argues that Bowers was too far away to have read her license plate tags when he initiated the stop.[5] However, Plaintiff admitted to Krause that

---

[5] In support of this, Plaintiff relies again on the Connolly Declaration in which Connolly states that it is "unlikely" that Bowers could have seen Plaintiff's tags and that it "appears" Bowers "chose to rely on an Improper Display violation as a post-hoc justification for the stop." Connolly Decl. ¶¶ 8-10. This is based entirely on Connolly's speculation and there is no indication that his conclusions are

Bowers was "very close behind" her when he turned on his lights to pull her over, Krause Decl. Ex. 5 at 1:27:36-1:28:03,[6] and, in any event, Bowers did not need to read the sticker because it was in the entirely wrong location, which is itself a violation of ORS 803.560(1)(a).

On this record, the Court concludes that Bowers had both reasonable suspicion and probable cause to stop Plaintiff for violation of ORS 803.560.

In sum, the Court concludes that Bowers had probable cause and reasonable suspicion to stop Plaintiff under both ORS 811.370 and ORS 803.560 and so Defendants are entitled to summary judgment on Counts I and II.

## II.    The Standard Field Sobriety Tests

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by extending the stop to administer the SFSTs without probable cause (Count III).  Compl. ¶¶ 58-60.  Plaintiff also alleges that the City of Philomath unlawfully confined her when Bowers extended the stop for Plaintiff to perform the SFSTs (Count IV).  *Id.* ¶¶ 61-65.

Under Oregon law, probable cause is not a prerequisite for asking a driver for consent to perform field sobriety tests in the context of a DUII stop.  *State v. Prado*, 320 Or. App. 43, 47 (2022) (citing *State v. Ramos*, 149 Or. App. 269, 272 (1997)).  An officer can expand the scope of a lawful traffic stop, including by asking for consent

based on sufficient facts or data or that they are the product of reliable principles and methods for purposes of Federal Rule of Evidence 702.  It is also contradicted by Plaintiff's admission to Krause that Bowers was "very close behind" her when he turned on his lights to initiate the stop. Krause Decl. Ex. 5 at 1:27:36-1:28:03.

[6] This is consistent with Bowers's testimony that he was "probably three car lengths" and closing behind Plaintiff's car when he observed her license plate stickers.  Sherlag Decl. Ex. 1, at 24.

to perform SFSTs, "if they develop reasonable suspicion that a defendant has engaged in criminal conduct." *Prado*, 320 Or. App. at 47-48.

Likewise, under federal law, police may extend a traffic stop if reasonable suspicion supports the extension. *Rodriguez v. United States*, 575 U.S. 348, 358 (2015). "The reasonable-suspicion standard is not a particularly high threshold to reach," and, although it must be more than a hunch, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (internal quotation marks and citation omitted). In reviewing reasonable suspicion, courts look to the "totality of the circumstances" and "[t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 1078.

For DUII, "[a] person is under the influence of an intoxicating liquor, controlled substance, or inhalant when the person's physical or mental faculties are adversely affected to a noticeable or perceptible degree." *State v. Miller*, 265 Or. App. 442, 445 (2014).

As noted, only reasonable suspicion is required for an officer to ask for a driver to consent to SFSTs. But even under a higher standard, "the threshold for probable cause to believe that an individual has been driving under the influence is relatively low in Oregon." *Gage v. City of Baker City*, Civil No. 09-6107-AA, 2010 WL 954222,

at *2 (D. Or. Mar. 11, 2010), *aff'd* 432 Fed. App'x 664 (9th Cir. 2011); *see also Doyle v. City of Medford*, Civ. No. 1:16-cv-01376-MC, 2017 WL 3784038, at *6 (D. Or. Aug. 31, 2017) (holding same), *aff'd* 742 Fed. App'x 342 (9th Cir. 2018).

Here, Bowers observed that Plaintiff's demeanor shifted rapidly between irritated and argumentative, to smiling and giggling during the initial stages of his encounter with Plaintiff.  Bowers Decl. ¶¶ 8-9.  He observed that Plaintiff struggled with her paperwork, mumbled to herself, and appeared to lose her train of thought. *Id.* ¶¶ 9-13.  Bowers observed that Plaintiff was rambling, failing to answer questions, and speaking in incomplete sentences.  *Id.* ¶¶ 13-15.  The Court has reviewed Bowers's body-worn camera footage, Bowers Decl. Ex. 2, and finds it is consistent with Bowers's description of the encounter.

The Oregon Administrative Rules provide a non-exhaustive list of "acts, signs, or symptoms" of intoxicant impairment in DUII cases, including "difficulty following directions"; "speech difficulties or unusual speech patterns,"; "disorderly or unusual conduct or demeanor,"; "sleepiness or drowsiness"; "mood swings"; and "difficulty with divided attention."  OAR 257-025-0010(3), (6), (7), (11), (14), (15).  These signs were observed by Bowers and can be seen on Bowers's body-worn camera footage. Bowers Decl. ¶¶ 9-15, Ex. 2.

In her Response, Plaintiff points to a list of indicators for impairment that she did not display, but the absence of factors does not negate probable cause. Furthermore, the "fact that there were other possible, lawful explanations for a person's behavior, such as frustration, does not preclude the conclusion that there

was probable cause." *Miller*, 265 Or. App. at 447. Even if the individual offers plausible explanations for his behavior, "an officer is not required to eliminate alternative explanations to indicia of intoxication before concluding that there is probable cause to arrest." *Id.* (internal quotation marks and citations omitted); *see also Valdes-Vega*, 738 F.3d at 1078-79 ("A determination that reasonable suspicion exists need not rule out the possibility of innocent conduct." (internal quotation marks and citation omitted, alterations normalized)).

Here, the Court concludes that no reasonable jury could find that Bowers did not have reasonable suspicion to ask for Plaintiff's consent to perform the SFSTs. Defendants are therefore entitled to summary judgment on Counts III and IV.

### III.    The Arrest

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by placing her under arrest (Count V). Compl. ¶¶ 66-68. Likewise, Plaintiff alleges that the City of Philomath unlawfully confined her when Bowers placed her under arrest (Count VI). *Id.* ¶¶ 69-73.

The existence of probable cause is a defense to a claim for wrongful arrest under both state and federal law. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violation the Fourth Amendment, arrest the offender."); *Miller*, 282 Or. App. at 355 (holding that "by rendering an arrest lawful, the existence of probable cause for the

arrest necessarily defeats a claim of false arrest.").  "A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a 'fair probability' that the suspect has committed a crime."  *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").  Probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).  For federal purposes, probable cause is an objective standard.  *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).  Thus, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."  *Devenpeck*, 543 U.S. at 153.

As previously discussed, probable cause under Oregon law contains both a subjective and an objective element.  *Isley*, 182 Or. App. at 190.  "[A]n officer has probable cause to make an arrest if (1) the officer subjectively believes that a crime has been committed; and (2) the officer's subjective belief is objectively reasonable under the circumstances."  *Miller*, 282 Or. App. at 357.

Neither federal nor state law requires the officer to rule out innocent explanations in the formation of probable cause.  *Miller*, 282 Or. App. at 358; *see also Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) ("Once probable cause to arrest someone is established, however, a law enforcement officer is not required by the Constitution to investigate independently every claim of innocence, whether the

claim is based on mistaken identity or a defense such as lack of requisite intent." (internal quotation marks and citation omitted)).

As previously noted, the threshold for probable cause for DUII is not high in Oregon. *Gage*, 2010 WL 954222, at *2; *Doyle*, 2017 WL 3784038, at *6. "A person is under the influence of an intoxicating liquor, controlled substance, or inhalant when the person's physical or mental faculties are adversely affected to a noticeable or perceptible degree." *Miller*, 265 Or. App. at 445.

Here, Bowers noted signs of impairment when Plaintiff performed the SFSTs. Bowers Decl. ¶¶ 21, 24, 26, 27, 29, 30. The video evidence confirms Bowers' account and shows that Plaintiff had difficulty maintaining her balance and following directions when performing the SFSTs. *Id.* ¶¶ 21-30; Ex. 2. Plaintiff essentially concedes her poor performance on the SFSTs. *See* Pinski Decl. ¶¶ 45 ("I did not believe my medical conditions or my fatigue would affect my performance because I did not realize that balance was such a large component."); 47 ("Performance on the divided attention tests was difficult for me due to the incredibly cold weather, my exhaustion, and my medical conditions which included not only plantar fasciitis but also piriformis syndrome which caused sciatic pain."); 48 ("Defendant Bowers also spoke quickly when instructing me, so it was difficult for me to correctly perform the tests."); Pl. Resp. at 4 (acknowledging that Plaintiff "was not perfect on the Walk and Turn or One Leg Stand," and "overestimated the passage of time in the Modified Romberg Balance Test."), ECF No. 34.

Plaintiff argues that the prior illegality of the stop and the extension of the stop to request that Plaintiff perform SFSTs extends to Plaintiff's arrest. First, for the reasons discussed above, the Court has concluded that there was no prior illegality. Furthermore, the exclusionary rule does not apply in civil actions. *Lingo v. City of Salem*, 832 F.3d 953, 959 (9th Cir. 2016) (holding that the exclusionary rule does not apply in § 1983 cases); *State Forester v. Umpqua River Nav. Co.*, 258 Or. 10, 26 (1970) (declining to apply the exclusionary rule in a civil action).

Plaintiff also argues that there were innocent explanations for her performance on the tests, but as noted, Bowers was not required to eliminate such explanations in formulating probable cause. Similarly, Plaintiff's performance on the HGN and VGN tests do not dissipate probable cause. *See State v. Smalley*, 156 Or. App. 325, 330 (1998) (holding that "a suspect's success on any component of the field sobriety test" does not preclude a determination of objective probable cause).

Here, no reasonable jury could conclude that Bowers did not have probable cause to arrest Plaintiff on suspicion of DUII based on his earlier observations of Plaintiff's behavior and her performance on the SFSTs. Defendants are entitled to summary judgment on Counts V and VI.[7]

---

[7] Plaintiff's Response characterizes Count VI as arising under the Oregon constitution. Pl. Resp. 23. This is contrary to the allegation of the Complaint, which alleges unlawful confinement and does not reference the Oregon constitution. Compl. ¶¶ 69-73. Plaintiffs are not permitted to advance new claims or theories in opposition to a summary judgment motion. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

## IV.    The Search of Plaintiff's Vehicle

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by searching her vehicle (Count VII).  Compl. ¶¶ 74-76.  Plaintiff alleges that the City of Philomath intruded on her private affairs in violation of ORS 181A.125 when Bowers searched her car (Count VIII).  *Id.* ¶¶ 77-79.

As a preliminary matter, with respect to Count VIII, Plaintiff relies on ORS 181A.125, which provides: "No member of the *state police* shall in any way interfere with the rights or property of any person, except for the prevention of crime, or the capture or arrest of persons committing crimes."  ORS 181A.125 (emphasis added). The "state police" referred to in ORS 181A.125 are the Oregon State Police.  ORS 181A.010(8) (defining "state police").  Bowers is a Philomath municipal police officer and not a member of the Oregon State Police.  Plainly, Defendants' conduct was not a violation of ORS 181A.125.

Turing to the substance of the claims, the Supreme Court has held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal quotation marks and citation omitted).  The Oregon Supreme Court has also held that searches incident to arrest are permissible "when it is relevant to the crime for which defendant is being arrested and so long as it is reasonable in light of all the facts." *State v. Caraher*, 293 Or. 741, 759 (1982).

"Officers may conduct a warrantless search of an automobile, including containers within it, when they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity." *United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016). "Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* In Oregon, a search of a vehicle incident to arrest may be performed to seek evidence of DUII after the driver has been removed from the car and failed SFSTs because "what mattered was that the driver had controlled the car immediately *before* his arrest and that the search followed closely on the heels of that arrest, making the search of the car incident to the driver's arrest reasonable in time and scope." *State v. Krause*, 281 Or. App. 143, 147 (2016) (emphasis in original, internal quotation marks and citation omitted).

As discussed in the preceding sections, Plaintiff's arrest was lawful and supported by probable cause to believe she had committed the crime of DUII. The undisputed facts in this case show that Bowers had probable cause to believe that evidence of the crime of DUII could be found in the vehicle. Bowers, assisted by a Benton County Sheriff's Deputy, searched Plaintiff's vehicle incident to Plaintiff's arrests seeking evidence of the crime of DUII. Bowers Decl. ¶ 37. During the search, Bowers found and seized plastic bags of pill capsules and tablets and an orange prescription bottle containing multiple medications with the label scratched off, which Bowers believed to be related to the crime of DUII. *Id.* The Court concludes

that Bowers lawfully searched Plaintiff's vehicle and Defendants are entitled to summary judgment on Count VII.

For Count VIII, Plaintiff brings a state law claim for intrusion upon seclusion. To prevail on such a claim, a plaintiff must prove (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person. *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 831 (2020). The plaintiff bears the burden of establishing each element of the tort. *Mauri v. Smith*, 324 Or. 476, 485 (1996).

Here, neither party has been able to identify an instance in which Oregon courts allowed a claim for intrusion upon seclusion against police for conducting a search incident to arrest. In *Mauri v. Smith*, which involved police entry into a dwelling, the Oregon Supreme Court observed that the case turned on the issue of the plaintiff's consent to the entry: "We emphasize that the parties have brought the case to us only on a theory of consent. Defendant police officers and their employers have not argued before us that they had a separate justification—such as law-enforcement authority—for the initial entry in the absence of consent." *Mauri*, 324 Or. at 484 n.5.

This suggests that a claim for intrusion upon seclusion may be defeated by a demonstration of valid law enforcement authority. Such a conclusion would be entirely consonant with the well-established principle that police may conduct vehicle searches incident to arrest under Oregon law. *See, e.g., Krause*, 281 Or. App. at 147. To conclude otherwise would produce an absurd result—that police might conduct a

lawful search for purposes of a criminal investigation, including a search that yields evidence of a crime sufficient to sustain a prosecution, and yet be exposed to civil liability for carrying out that lawful search. The Court declines to endorse such an interpretation and concludes that Defendants are entitled to summary judgment on Count VIII.

## V.     Seizure of Items from the Vehicle

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by seizing items from the vehicle during the search (Count IX). Compl. ¶¶ 80-82. Plaintiff alleges the City of Philomath intruded upon her right to privacy in violation of ORS 181A.125 when Bowers seized items from her vehicle. (Count X). *Id.* ¶¶ 83-85.

These claims are based on Bowers's seizure of the pills and tablets found during the search of Plaintiff's vehicle. The pills were seized by Bowers on suspicion that they were evidence of the crime of DUII, for which Plaintiff had just been arrested. Plaintiff acknowledges that these claims are based on the same reasoning as the claims related to the search. Pl. Resp. 26. The Court concurs—the claims for the search and for the seizure must stand or fall together. For the reasons discussed in the preceding section, the claims will fall together because Bowers conducted a lawful search of the vehicle incident to Plaintiffs arrest seeking evidence of the crime of DUII and seized the pills as evidence of the same. Defendants are entitled to summary judgment on Counts IX and X.

## VI.    The DRE Evaluation

Plaintiff alleges, pursuant to § 1983, that Bowers and Krause violated her Fourth Amendment right to be free from unreasonable seizures when Krause administered the DRE evaluation (Count XI).  Compl. ¶¶ 86-88.  Plaintiff alleges that the City of Philomath and the City of Corvallis unlawfully confined Plaintiff when Krause administered the DRE evaluation (Count XII).  *Id.* 89-93.

If a person is arrested based on probable cause that they have committed the crime of DUII and the breathalyzer test reveals that they are not under the influence of alcohol, the police have "probable cause to continue with the DRE protocol because, if the DRE evidence was positive, then that would be evidence that defendant was under the influence of a controlled substance."  *State v. Burshia*, 201 Or. App. 678, 685 (2005).  Here, as discussed above, Bowers had probable cause to arrest Plaintiff for DUII and, once the breathalyzer test revealed that she was not impaired by alcohol, the probable cause did not dissipate.  Instead, Bowers sought and received Plaintiff's consent for urinalysis and a DRE examination.

Plaintiff asserts that she "merely acquiesced" to the DRE examination. However, the record demonstrates that Plaintiff twice affirmatively consented to the DRE examination, first to Bowers, and then a second time to Krause and her consent was recorded in both officers' body-worn camera footage.  Bowers Decl. ¶ 45; Ex. 3, at 00:27:00; Krause Decl. ¶ 9; Ex. 5, at 00:01:30. Defendants are entitled to summary judgment on Counts XI and XII.

## VII.    The Motel

Plaintiff alleges, pursuant to § 1983, that Bowers violated her Fourth Amendment right to be free from unreasonable seizures by confining her to the Galaxy Motel (Count XIV).  Compl. ¶¶ 94-96.  Plaintiff also alleges that the City of Philomath unlawfully confined her when Bowers allegedly confined her to the Galaxy Motel (Count XV).  *Id.* ¶¶ 97-101.

Whether a person is seized is an objective test.  Under Oregon law, a seizure occurs "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."  *State v. Ashbaugh*, 349 Or. 297, 316 (2010).  For federal purposes, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."  *Id.*

Here, after taking Plaintiff to the Galaxy Motel, Bowers issued Plaintiff her DUII citation, returned her property, and told her that if she needed anything to call before departing and having no further contact with Plaintiff that evening.  Bowers

Decl. ¶ 50; Ex. 4, at 00:10:54-00:14:00. Plaintiff was plainly not detained at this point. Plaintiff's subjective belief that she was confined to the motel cannot sustain a claim even if that belief were not palpably unreasonable.

No reasonable jury could find that Plaintiff was detained once she was dropped off at the motel. Defendants are entitled to summary judgment on Counts XIV and XV.

## VIII.  Malicious Prosecution

Plaintiff brings claims for malicious prosecution under § 1983 against Bowers (Count XVI) and Krause (Count XVII). Compl. ¶¶ 102-11. Plaintiff also brings state law claims for malicious prosecution against the City of Philomath (Count XVIII) and the City of Corvallis (Count XIX) based on the conduct of Bowers and Krause. *Id.* at ¶¶ 112-19.

Federal courts rely on state common law for the elements of a malicious prosecution claim. *Thompson v. Clarke*, 596 U.S. 36, 43 (2022). To prevail on a malicious prosecution claim under Oregon law, a claimant must demonstrate (1) the institution or continuation of criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result. *Miller*, 282 Or. App. at 360. A federal claim for malicious prosecution under § 1983 also requires a plaintiff to show that the defendants prosecuted him the purpose of denying him a "specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1190 (9th Cir. 1995).

Probable cause is a complete defense to a claim for malicious prosecution. *Gustafson v. Payless Drug Stores Nw., Inc.*, 269 Or. 354, 356 (1974). Whether a defendant "has probable cause to institute the criminal proceeding is a matter for the court to decide and not the jury." *Id.* at 357.

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). This presumption of prosecutorial independence "does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

Here, Philomath deputy city attorney Catherine Pratt reviewed Bowers's police report, the citation, Krause's DRE report, and, at some point, reviewed the body worn camera footage in making a charging decision. Pratt Decl. ¶ 3. Pratt's Declaration indicates that she was familiar with the facts of the case. *Id.* ¶¶ 3-8. Based on this review, Pratt affirms that she "reasonably believed there was both subjective and objective probable cause to arrest [Plaintiff] on January 29, 2022, for driving under the influence of an intoxicant in violation of ORS 813.010(1)(b), and to prosecute [Plaintiff] for that misdemeanor crime based on the totality of the circumstances." *Id.* ¶ 9. Pratt further affirms that her "decision to endorse the

citation and begin the prosecution was based upon [her] own training and experience in making prosecutorial decisions," and that "[a]t no time did Philomath Police Officer Bowers or Corvallis Police Officer Krause, or anyone at the City of Philomath or the City of Corvallis influence or attempt to influence [her] decision to prosecute, continue to prosecute or eventually dismiss the charge." *Id.* ¶ 11. Bowers Declaration likewise affirms that he submitted his report and may have spoken to Pratt, but "did not influence or attempt to influence [Pratt's] prosecution decisions about [Plaintiff]," and "[t]he decision whether or not to prosecute was hers alone, not mine." Bowers Decl. ¶ 57. Krause affirms that, beyond the submission of her report to the Philomath City Attorney's Office, she played no role in the initiation or continuation of charges against Plaintiff. Krause Decl. ¶ 34.

Here, Plaintiff relies on her prior allegations of misconduct or incomplete investigation by Bowers and Krause, but as discussed above, Defendants' decisions were supported by either reasonable suspicion or probable cause, as appropriate, at each stage of the encounter. Plaintiff has presented no evidence to counter Defendants' demonstration of probable cause.

Plaintiff offers a bizarre argument that the fact that Bowers and Krause were married is somehow exculpatory evidence but provides only unsupported speculation. There is no evidence that the fact that Bowers and Krause were married had any effect on anything.

The Court concludes that there was probable cause to commence the prosecution of Plaintiff for DUII and the existence of probable cause is complete

defense to Plaintiff's malicious prosecution claims.   Defendants are entitled to summary judgment on Counts XVI, XVII, XVIII, and XIX.

Because Defendants are entitled to summary judgment on the substance of Plaintiff's § 1983 claims against the individual Defendants, the Court need not reach the question of qualified immunity.

## IX.    Negligent Infliction of Emotional Distress

Count XX of the Complaint alleges a claim for negligent infliction of emotional distress ("NIED") against the Cities of Philomath and Corvallis based on the acts of Bowers and Krause.  Compl. ¶¶ 120-24.

"Under Oregon law, a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022).  "There is an exception to that general rule when the defendant violated a 'legally protected interest' independent of the plaintiff's interest in being free from negligent conduct," and if the plaintiff establishes a negligence claim based on the violation of such an interest, "then generally speaking, the pain for which recovery is allowed includes virtually any form of conscious suffering, both emotional and physical that foreseeably resulted from the violation." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff bases her claims on Bowers's allegedly "unlawful stop, detainment, arrest, and malicious prosecution" of Plaintiff, "as well as Krause's unlawful detainment" of Plaintiff.  Compl. ¶ 123; *see also id.* ¶ 121 ("Bowers and

Krause violated [Plaintiff's] legally protected interest to be free from unreasonable seizures on behalf of law enforcement, and to be free from malicious prosecution.").

The most obvious problem with Plaintiff's NIED claim is that the acts underlying the claim—unlawful stop, false arrest, malicious prosecution—are intentional torts. Oregon law does not permit a plaintiff to recover under a theory of negligence based on allegations that make out an intentional tort. *Kasnick v. Cooke*, 116 Or. App. 580, 583 (1992) ("Under the allegations, [a plaintiff] is not entitled to recover for what can only be intentional misconduct by pleading and proving only negligence. Stated differently, plaintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence. *He has no negligence claim, as a matter of law*[.]" (emphasis added)).

In her Response, Plaintiff changes tack and argues that the municipal Defendants may be liable for a failure to train Bowers and Krause. Pl. Resp. 32. It is not necessary for the Court to address this contention, however, because Plaintiff's NIED claim does not allege, or even mention, a failure to train. Rather it alleges direct harm from her stop, arrest, detention, and prosecution. Compl. ¶¶ 120-24.[8] Plaintiff may not invent new theories in response to a motion for summary judgment. Defendants are entitled to summary judgment on Count XX.

---

[8] As previously noted, Plaintiff's Counts XXI and XXII alleged claims for failure to train and/or supervise pursuant to § 1983 but Plaintiff conceded those claims during conferral.

### X.   *Monell* **Claims**

Plaintiff brings *Monell* claims[9] against the City of Philomath (Count XXIII) and the City of Corvallis (Count XXIV).  Compl. ¶¶ 138-41.  Plaintiff alleges that the "acts and omissions of the individual defendants were in accordance with the official or unofficial customs, policies, and/or procedures" of the City Defendants.  *Id.* ¶¶ 139, 141.

"Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom."  *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000).  Alternatively, a plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  "To prevail on a municipal liability claim under 42 U.S.C. § 1983, Plaintiff must show that a municipal custom or policy caused the violation of [the plaintiff's] constitutional rights."  *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 537 F. Supp.3d 1205, 1229 (D. Or. 2021).  However, if no constitutional violation occurred, then a municipal liability claim fails under § 1983.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a *Monell* claim cannot survive without an underlying constitutional violation).

Here, for the reasons discussed in the preceding sections, the claims against Bowers and Krause fail and so the *Monell* claims against the City Defendants must also fail.

---

[9] *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978).

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 26, is GRANTED.  Final judgment shall be entered accordingly.

It is so ORDERED and DATED this _____24th_____ day of February 2026.


_/s/Ann Aiken_____
ANN AIKEN
United States District Judge